JAMES P. FENSTERMAKER and MARGARET J. FENSTERMAKER, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Fenstermaker v. Commissioner
Docket Nos. 11066-76, 11067-76, 11068-76.
United States Tax Court
T.C. Memo 1978-210; 1978 Tax Ct. Memo LEXIS 307; 37 T.C.M. (CCH) 898; T.C.M. (RIA) 780210; June 7, 1978, Filed *307 Petitioner-husbands are executives of a large electric utility company. Pursuant to its policy, the Company paid or reimbursed petitioners for their wives' expenses at annual trade association conventions. The business purpose for the conventions was the technical business meetings and lectures, not the social functions. The wives provided no business connected services for their husbands at the conventions, and their attendance was unnecessary to their husbands' effectiveness there. Held: Petitioners must include their wives' convention expenses in gross income. Held further: Petitioners may not deduct those expenses under sec. 162(a)(2), I.R.C. 1954. Pursuant to Company policy, petitioners' employer reimbursed them for dues, fees, and expenses at social, athletic, and country clubs. One of their reasons for joining the clubs was to promote the goodwill of their employer. Petitioners used the clubs for personal and family entertainment and recreation. Petitioner Grueser was also reimbursed for dues in a club operated solely to provide lunches conducive to business discussions. Petitioner did not use those club facilities at all. Held: Petitioners must include *308 all reimbursements' in gross income. Held further: Petitioners have failed to satisfy the primary use test of sec. 274(a)(1)(B), I.R.C. 1954, and, therefore, may not deduct their country club dues, fees, or expenses. Held further: Petitioner Grueser has failed to establish that his luncheon club dues are deductible under sec. 162(a), I.R.C. 1954. Held further: Petitioner Green has satisfied sec. 274(a)(1)(B), I.R.C. 1954, with respect to his Athletic Club dues. He may deduct under sec. 162(a), I.R.C. 1954, the portion of his dues that is directly related to the furtherance of his trade or business. Petitioner Grueser was reimbursed by his employer for Christmas gifts which he made. Petitioner did not address himself to this issue either at trial or on brief. Held: Respondent's determination is upheld because petitioner failed to meet his burden of proof. Pursuant to Company policy, petitioners were reimbursed for the cost of lunches during which they conducted Company business. Respondent determined that the reimbursements attributable to petitioners' portions of the meals were additional taxable income to them. Petitioners normally expended those amounts *309 on themselves regardless of whether they conducted business at lunch. Held: Petitioners must include the reimbursements in gross income. Held further: The cost of petitioners' lunches is a nondeductible personal expense. John A. Dunkel,Glenn A. Nadell, and Michael R. Becker, for the petitioners. Mary Helen Weber, for the respondent. TIETJENS
MEMORANDUM FINDINGS *312 OF FACT AND OPINION TIETJENS, Judge: Respondent has determined the following deficiencies in the petitioners' Federal income taxes: Taxable Petitioner
Year
Deficiency
James P. and Margaret J.
1972
$230.00
Fenstermaker
1973
560.00
Arthur G. and Josephine C.
1972
526.65
Green
1973
22.91
Robert J. and Harriett D.
1972
879.80
Grueser
1973
303.15 The issues are: (1) whether amounts paid by their employer to the petitioner-husbands for their wives' expenses at annual trade asociation conventions resulted in taxable income to petitioners; (2) whether certain amounts reimbursed to the petitioner-husbands by their employer for dues, fees, and expenses at social, athletic, and country clubs resulted in taxable income to petitioners; (3) whether the amount reimbursed to petitioner Robert J. Grueser by his employer for Christmas gifts resulted in taxable income to him; and (4) whether amounts reimbursed to petitioner-husbands by their employer for the cost of certain lunches resulted in taxable income to them. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners James P. and Margaret J. Fenstermaker resided *313 in Groveport, Ohio, when they filed their petition. They filed their joint Federal income tax returns for 1972 and 1973 and an amended return for 1972 with the Internal Revenue Service Center in Cincinnati, Ohio. Petitioners Arthur G. and Josephine C. Green resided in Columbus, Ohio, when they filed their petition. Petitioners filed their joint Federal income tax returns for 1972 and 1973 and an amended return for 1972 with the Internal Revenue Service Center in Cincinnati, Ohio. Petitioners Robert J. and Harriett D. Grueser resided in Columbus, Ohio, when they filed their petition. They filed their joint Federal income tax returns for 1972 and 1973 with the Internal Revenue Service Center in Cincinnati, Ohio. The petitioner-husbands are executives of the Columbus and Southern Ohio Electric Company (the Company). During 1972 and 1973, petitioner Arthur G. Green was president, chief executive officer, and a director of the Company. In 1973, he also served as chairman of the board of directors. During 1972 and 1973, petitioner Robert J. Grueser was executive vice president and a director of the Company, and petitioner James P. Fenstermaker was senior vice president for operations *314 of the Company. Although the petitioners each owned stock in the Company, their interests therein were nominal in relation to the total average number of shares outstanding; the Company's common and preferred shares are listed and widely traded on the New York Stock Exchange. The Company is a public utility engaged principally in the generation and sale of electricity in central and southern Ohio. Its principal office is located in Columbus, Ohio, where the petitioners worked. Annual Trade Association Conventions
The Company is and, during 1972 and 1973, was a member of the Edison Electric Institute (EEI) and the Association of Edison Illuminating Companies (AEIC). EEI is a trade association of the nation's electric utility companies. One of its main functions is to work collectively on a wide range of industry problems through various committees. Among other things, the committees conduct investigations and research and development, keep members updated on current developments, and follow government and industry policies. AEIC is a similar association of utilities that at one time have had "Edison" in their names. Petitioner-husbands occasionally are required *315 to travel on behalf of the Company. Most of their travel involves attending various technical meetings. Normally they would attend those meetings without their wives. Once in 1972 and twice in 1973, however, petitioners attended EEI and AEIC conventions with their wives. On June 5-7, 1972, petitioners and their wives attended the EEI convention in San Diego, California. Mr. Green also took his daughter. Except for a reimbursement to the Company for his daughter's expenses, all expenses for the convention were paid or reimbursed by the Company. [2] The following amounts received from the Company are attributable to petitioners' wives: Josephine C. Green
$561.78
Harriett D. Grueser
385.05
Margaret J. Fenstermaker
388.34
*316 The annual convention of EEI for 1973 was held in Dallas, Texas, on April 2-4, 1973. The petitioners again represented the Company with their wives. The expenses of their wives were paid or reimbursed by the Company as follows: Josephine C. Green
$454.35
Harriett D. Grueser
319.66
Margaret J. Fenstermaker
412.74
In 1973, petitioners Green and Fenstermaker also attended the annual convention of AEIC. The convention was held on October 24-27 at White Sulphur Springs, West Virginia. Again, petitioners represented the Company and attended with their wives. The expenses for their wives, which were paid or reimbursed by the Company, were $155.71 for Mrs. Green and $145.28 for Mrs. Fenstermaker. At each of the conventions, petitioners attended various technical discussions and meetings.In addition, the programs provided for social events and entertainment. Those events were designed for the enjoyment of the convention participants and their spouses. Petitioners attended with their wives, and 80 percent to 85 percent of others attending were also accompanied by spouses. Luncheons and fashion shows were given especially for wives, and they were invited to attend *317 the business sessions too. There were also several leisure and recreational activities designed for all those attending. At both EEI conventions, a special tour was available for sightseeing and a special evening entertainment program was arranged. At the AEIC convention, provisions were made for golf, skeet and trap shooting, and bowling tournaments. Again, except for the business sessions, most of the activities were designed specifically for couples. However, the primary business reason for the conventions was the technical business meetings and lectures. The social functions at the conventions were mainly personal in nature. In this regard, we note that petitioners Green and Grueser had attended the conventions in the past without their wives. When their wives were not present, they usually attended fewer of the social functions but they still would attend all of the technical business meetings and lectures.
Club Dues, Fees, and Expenses
In 1972 and 1973, each of the petitioner-husbands was a member of various country and athletic clubs in Columbus, Ohio. They joined the clubs pursuant to Company policy. The Company, hoping that its goodwill would be promoted by *318 the membership of its officers in various social and service clubs, reimbursed them for their club dues, fees, and expenses. Usually the Company designated the clubs to which its officers would belong. This would ensure that too many officers did not belong to the same clubs, thus allowing greater community contact. Also, some service clubs would permit only one member from any single company to join. Petitioner Green:
In 1972 and 1973, petitioner Green was a member of the Columbus Country Club. The club is located in Columbus, Ohio, and has facilities for swimming, tennis, golf, and dining. The Company reimbursed Mr. Green for all his dues, fees, and expenses at the country club except certain items charged by him to his personal account. In 1972, petitioner spent the following amounts at the Columbus Country Club, for which he received reimbursements: Dues and men's golf fees
$744.00
Locker fees, prize fund donation,
Christmas donation, and mis-
cellaneous items
101.50
Luncheon expense
12.28
Other dining expenses
50.51
Total Reimbursements
$908.29
Respondent determined that all but $50.51(other dining expenses) was additional income to *319 petitioner Green. Petitioner had also incurred dining expenditures at the club in the amount of $253.01, which he charged to his personal account.During 1972, he used the dining facilities of the club twelve times for personal purposes and twice for business. The luncheon expense of $12.28 was for a lunch with petitioner Grueser. Green and Grueser discussed a rate financing case and certain Company operating problems at the lunch. The other reimbursed fees and expenses represent the normal costs associated with a country club membership. In 1973, petitioner Green spent the following amounts at the Columbus Country Club, for which he again received reimbursement: Dues and men's golf fees
$ 744.00
Locker fees, prize fund donation,
Christmas donation, and mis-
cellaneous items
101.50
Luncheon expenses of Mrs. Green
146.46
Other dining expenses
120.52
Total Reimbursements
$1,112.48
Respondent determined that all but $120.52(other dining expenses) was additional income to petitioner. Petitioner had also incurred dining expenditures of $340.87 which he again charged to his personal account. During 1973, he used the club's dining facilities ten times for *320 personal purposes and four times for business. Mrs. Green's luncheons were meetings of the women's auxiliary of the National Accountants Association and the Boy Scouts, which she sponsored. Mrs. Green is neither an accountant nor a Company employee. Like those reimbursed in 1972, the other fees and expenses are the usual costs associated with a country club membership. The record contains no substantiation of petitioner Green's use of the Columbus Country Club facilities other than his use of the dining facilities. However, he did use the club for personal entertaining in 1972 and 1973. In 1973, petitioner Green was also a member of the Athletic Club. The Athletic Club is located in downtown Columbus. Petitioner used the club principally for luncheons, meetings, and receptions. During 1973, he spent $375 in dues and $84 in expenses for locker fees, Touchdown Club dues, and a Christmas fund donation. The Company reimbursed him for all those expenditures in that year. The Touchdown Club promotes sports among young people in central Ohio. Petitioner attended several of its meetings. Petitioner used the grill facilities at the Athletic Club only once during 1973 and charged *321 it to his personal account. Petitioner attended eleven meetings there in 1973.Three of those meetings were meetings of charitable organizations; the rest, as best we can determine, were business related. We find that petitioner Green made no other use of the club in 1973. Petitioner Grueser:
In 1972 and 1973, petitioner Grueser was a member of the Scioto Country Club. The club is located in Columbus, Ohio, and has facilities for swimming, tennis, golf, paddleball, and dining. In 1972, the Company reimbursed petitioner for the following expenditures made by him at the club: Membership dues
$ 900.00
Golf club care fees,
tournament fee, locker
fees, and miscellaneous
items
136.00
Dining expenses
106.07
Total Reimbursements
$1,142.07
Respondent determined that $1,036 of the reimbursements was additional income to petitioner. Respondent did not treat the reimbursements for petitioner's dining expenses at the club as additional income. Some of the dining expenses included amounts expended in 1971 but not reimbursed until 1972. During 1972, petitioner used the club dining facilities twenty-two times for personal purposes and eleven times for business. *322 The golf club care fees were the cost of caring for Mr. and Mrs. Green's golf clubs, and the tournament fee was an entry fee for a golf tournament. We find both fees to be entirely personal in nature. The other fees and expenses represent the usual costs associated with a country club. In 1973, the Company reimbursed petitioner for the following expenditures made by him at the club: Membership dues
$ 965.00
Golf club care fees, locker
fees, tournament fee,
Christmas fund, and mis-
cellaneous items
103.50
Dining expenses
265.45
Total Reimbursements
$1,333.95
Respondent determined that $1,068.50 of the reimbursements was additional income to petitioner. Again, none of the reimbursed dining expenses has been treated as additional income. The rest of the reimbursements are for items virtually identical to those described for 1972. Petitioner used the club dining facilities in 1973 six times for personal purposes and five times for business. The record contains no substantiation of petitioner's use of other club facilities during 1972 and 1973. He did use them for personal entertaining in both years, however. In 1972 and 1973, petitioner Grueser was *323 also a member of the Columbus Maennerchor Club. The Company reimbursed him for membership dues of $40 in 1972 and $50 in 1973. Respondent determined that those amounts were additional income to petitioner. The Maennerchor Club is a German restaurant for members and their guests. Petitioner did not use the club facilities at all in 1972 or 1973. Petitioner Fenstermaker: In 1973, petitioner Fenstermaker was a member of the Columbus Country Club. He joined the club upon Mr. Green's suggestion. The Company reimbursed petitioner in 1973 for the following expenditures at the club: Dues and men's golf fees
$ 598.00
Locker fees, Christmas and
prize fund donations, and
miscellaneous golf charges
43.53
Dining expenses
585.87
Total Reimbursements
$1,227.40
Respondent determined that $641.53 of the reimbursements was additional income to petitioner. Petitioner was not reimbursed for amounts charged to his personal account, and respondent did not treat any of the reimbursements for dining expenses as additional income. Petitioner used the club dining facilities twenty-two times for personal purposes and twenty-one times for business. The record contains no *324 substantiation of his uses of the club's other facilities.During 1973, however, he definitely used them for family and personal recreation and entertainment. The other reimbursements were for expenses normally associated with a country club. Christmas Gifts
During 1973, the Company reimbursed petitioner Grueser $70 for Christmas gifts to persons at the Grandview Inn. Respondent determined this amount to be additional income to petitioner. Petitioner did not explain the nature or purpose of those gifts, and the record contains no evidence on this issue. Lunches
Each of the petitioner-husbands maintains an expense account with the Company. Among other things, they charge to the accounts the costs of meals during which they feel Company business was conducted. Petitioners pay for the meals when taken and are later reimbursed. Most of the meals involved herein were eaten at the Fort Hayes Hotel across the street from petitioners' office building; the rest were eaten at various other restaurants in Columbus. The Company does not own or occupy the Fort Hayes Hotel or any of the other restaurants. In 1972 and 1973 the Company reimbursed petitioner Grueser for the cost *325 of lunches on 144 days and 109 days, respectively. Some of the meals had been taken during the previous calendar year, but were reimbursed only when petitioner filed his expense account. Reimbursements for some of the meals have not been treated by respondent as additional income. Nevertheless, respondent has determined that petitioner Grueser had additional income from the reimbursed lunches of $620 in 1972 and $477.04 in 1973. Although Mr. Grueser always had guests at the lunches, those amounts represent the cost of Mr. Grueser's meals only. Most of the meals were shared with other Company executives. Usually they would discuss general Company business. Occasionally the lunches followed or preceded a meeting between executives in their offices. Sometimes, lunches were considered to be the best place to discuss personnel problems, while other lunches were shared with retired company employees. Regardless of whether anyone joined him, however, Mr. Grueser always ate lunch, usually at the Fort Hayes Hotel. Respondent has also determined that petitioner Green had additional income from reimbursed lunches of $255 in 1972 and $191.10 in 1973. All of the lunches (82 in 1972 *326 and 67 in 1973) were shared with petitioner Grueser. Grueser would pay for the meals and receive his reimbursements from the Company. Respondent's determinations allocate the costs of the meals to each. Thus the costs of Green's meals were determined to be additional income to Green alone, while the costs of Grueser's meals were treated as additional income only to him. Again, at the lunches, petitioners Green and Grueser discussed general Company business. Occasionally, they were joined by other individuals who also participated in those discussions. The discussions usually involved particular problems that had recently arisen and needed special attention. In this regard, we find the petitioners to be very credible witnesses. Mr. Grueser explained in considerable detail the nature of his discussions at each contested luncheon, and we find that business was actually discussed at some length at each meal. Finally, respondent determined that petitioner Fenstermaker had additional income of $257.68 in 1972 and $176.65 in 1973 for reimbursed lunches. Those amounts represent the portions of reimbursed luncheon expenses attributable only to Mr. Fenstermaker himself. Except one *327 lunch with Mr. Green in 1973, none of Mr. Fenstermaker's reimbursed lunches was shared with the other petitioners. The reimbursements were for 68 lunches in 1972 and 49 lunches in 1973. Most of the meals were eaten at the Fort Hayes Hotel, though many were enjoyed at other restaurants in Columbus. At the lunches, Mr. Fenstermaker discussed with various Company employees and outside consultants assorted business problems. In this regard, we find petitioner Fenstermaker also to be a very credible witness.He explained in detail the nature of his discussions at each meal; and like Messers. Grueser and Green, he properly maintained his expense reports, listing the persons who joined him for lunch and the business purpose of the discussions.Thus we find that business was actually discussed at each of the contested meals. We also find that each of the petitioner-husbands would normally take their lunches at some restaurant during working hours regardless of whether they would discuss business at those lunches. OPINION Annual Trade Association Conventions
The first issue is whether amounts paid by petitioners' employer for their wives' expenses at the annual trade association *328 conventions resulted in taxable income. Petitioners contend that none of those expenses is includable in petitioners' gross incomes because they are noncompensatory, ordinary and necessary business expenses of their employer. Alternatively, petitioners argue that if we hold the wives' expenses to be gross income, then they are entitled to deduct the expenses as ordinary and necessary business travel expenses under section 162(a)(2). [3] Respondent contends simply that the wives' expenses are includable in gross income and are nondeductible personal expenditures. Gross income means all income from whatever source derived. Section 61(a). The language of section 61 is extremely broad, for Congress intended "to exert in this field 'the full measure of its taxing power.'" Commissioner v. Glenshaw Glass Co.,348 U.S. 426, 429 (1955). Thus Congress applied no limitations on the source of taxable receipts, nor restrictive labels of their nature. And the courts have given a liberal construction to the section, recognizing the *329 Congressional intent to tax all gains except those specifically exempted. Id. at 429-430; Commissioner v. Jacobson,336 U.S. 28, 49 (1949); Helvering v. Stockholms Enskilda Bank,293 U.S. 84, 87-91 (1934). We think it clear that petitioners had received an economic benefit when their employer paid for the expenses of their wives at the conventions. This include the value of transportation to and from the conventions and of meals and lodging while so attending. Regardless of whether the trips were paid in advance or the costs reimbursed, and regardless of whether there was a business purpose for the attendance of the wives, the value of the trips is includable in petitioners' respective gross incomes. See Patterson v. Thomas,289 F.2d 108 (5th Cir. 1961), cert. denied 368 U.S. 837 (1961), reh. denied 370 U.S. 966 (1962). See also Rudolph v. United States,370 U.S. 269, 272-274 (1962) (separate opinion); Cockrell v. Commissioner,38 T.C. 470, 477-478 (1962), affd. 321 F.2d 504 (8th Cir. 1963). They have received something, the value of which is *330 not specifically excluded from gross income under the Code. See Part III, Subchapter B, Chapter 1, I.R.C. 1954. Therefore, they have realized gross income in that amount. Petitioners argue, however, that the trips were noncompensatory business expenses of their employer and thus are not includable in gross income. A similar argument was considered in Patterson v. Thomas,supra at 111-112. There the taxpayer, a field representative of an insurance company, and his wife attended an out-of-town company meeting. Only certain outstanding field representatives were invited to attend, and those who were invited were required to go. All expenses of the taxpayer and his wife were paid or reimbursed by the employer. The district court held that the amounts paid by the employer were not income to the taxpayer or, in the alternative, were deductible by the taxpayer as an ordinary and necessary business expense. On appeal, the taxpayer argued that because he had no "command" over the expenditures paid in advance and was not free to spend them as he saw fit, those amounts were not income to him.With respect to the reimbursed expenses, the taxpayer argued that they did *331 not constitute gross income because they were spent for "the convenience of the employer." Rejecting the taxpayer's arguments, the Fifth Circuit Court of Appeals reversed the district court. The court emphasized that "receipt by a taxpayer of benefits in a form other than cash may constitute income." [Id. at 111.] Moreover, the court pointed out that "the convenience of the employer" rule applied only to meals and lodging and, in any event, applies only in a modified form under section 119. See also Commissioner v. Kowalski,     U.S.     ( Sup. Ct. Nov. 29, 1977, 40 AFTR 2d 77-6128, 77-2 USTC par. 9748), affg. 65 T.C. 44 (1975). After holding that the reimbursement for the trip was gross income to the taxpayer, the court then considered the deduction question, again holding against the taxpayer. We think that Patterson v. Thomas is controlling here. Although it is not clear from the record whether all of petitioners' expenses for the trips were paid in advance by their employer or reimbursed, petitioners received the economic benefit of the trips nonetheless. We think that the question of whether their wives' attendance *332 on the trips had a business purpose properly goes to the issue of deductibility by the taxpayers, not to the issue of inclusion. See also Rudolph v. United States,supra at 272-274; United States v. Woodall,255 F.2d 370 (10th Cir. 1958); Silverman v. Commissioner,253 F.2d 849, 851 (8th Cir. 1958), affg. 28 T.C. 1061 (1957); Warwick v. United States,236 F. Supp. 761, 766-767 (E.D. Va. 1964); Cockrell v. Commissioner, supra at 477-478; Kessler v. Commissioner,39 B.T.A. 646, 651 (1939). Cf. section 1.62-1(f)(2), Income Tax Regs., which presumptively treats reimbursements under an expense account as gross income. Petitioners' reliance on United States v. Gotcher,401 F.2d 118 (5th Cir. 1968), for their contention that the payments or reimbursements are not income is misplaced. We find that case to be distinguishable on its facts. The taxpayer in Gotcher was not an employee of the company that paid for his trip. Compare Patterson v. Thomas, supra.Moreover, the fact that a benefit received is not intended as compensation would *333 not necessarily preclude a finding of gross income. Section 61(a) lists several items of income as gross income including compensation. But it does not limit gross income to those items alone. Again, absent express authority to the contrary, [4] the receipt of an economic benefit is generally the proper occasion for taxation. Cf. Pascarelli v. Commissioner,55 T.C. 1082, 1090 (1971); Hornung v. Commissioner,47 T.C. 428, 439-441 (1967). The question nevertheless remains whether petitioners are entitled to deduct the convention expenses attributable to their wives. [5]Section 162(a)(2) allows a deduction for ordinary and necessary travel expenses incurred by the taxpayer while away from home in the pursuit of a trade or business. In order to deduct the expenses, petitioners must prove that their wives' attendance at the conventions had a bona fide business purpose. Section 1.162-2(c), Income Tax Regs. See also Rule 142(a), Tax Court Rules of Practice and Procedure. *334 A wife's performance of some incidental service at a convention does not cause her expenses to qualify as deductible business expenses. Section 1.162-2 (c), Income Tax Regs. Similarly, if her attendance is merely for social purposes, the expenses are nondeductible. Cf. section 1.162-2(d), Income Tax Regs.
Petitioners argue that the attendance of their wives at the conventions was necessary to their effectiveness as corporate executives for a large electric utility company. They base their argument upon the assertion that they met various other corporate executives at social functions during the conventions, whose acquaintances were later used to help solve job related problems. Because they would not have met those executives without the presence of their wives, petitioners conclude that the presence of their wives at the conventions was necessary to their effectiveness as employees. In this regard, however, petitioners have failed to prove their assertions. They were unable at trial to provide a list of persons whom *335 they met at the conventions, much less prove that they would not have met those persons without the presence of their wives. Moreover, although the conventions were predominantly attended by couples, we think that those who attended without spouses were just as effective as the others. Petitioners Green and Grueser had attended the conventions in the past without their wives. Aside from missing a few of the social functions, they were just as effective then. The real business purpose for the trips was to attend the technical business meetings and lectures, not the social functions. Petitioners' reliance on United States v. Disney,413 F.2d 783 (9th Cir. 1969), Bank of Stockton v. Commissioner,T.C. Memo. 1977-24, and McDonell v. Commissioner,T.C. Memo. 1967-18, is misplaced.In Bank of Stockton, we never considered the issue of the deductibility of a spouse's travel expenses by an employee; the issue was whether the employer could deduct the expenses for which it had paid. Furthermore, the facts of all the above decisions are strikingly different from this case. In all those cases, the spouses' duties on the trips were *336 substantial and could not have been performed by the taxpayers alone. In this case, attendance by the petitioners' wives was not necessary to the business conducted at the conventions. Finally, we think that petitioners' other arguments and assertions for deductibility also fail for lack of proof or merit. Any business services that the wives may have provided their husbands were minimal at best. Moreover, the Company policy of sending wives to the convention is not determinative of whether there is a bona fide business purpose for their attendance. Cf. Patterson v. Thomas, supra;Hitchcock v. Commissioner,66 T.C. 950, 959 (1976); Silverman v. Commissioner,28 T.C. 1061, 1064 (1957), affd. 253 F.2d 849 (8th Cir. 1958). We think that the wives' attendance was primarily a personal benefit to petitioners, nondeductible as such. [6] See also section 262. Club Dues, Fees, and Expenses
The second issue is whether petitioners realized taxable income from reimbursements *337 by their employer for dues, fees, and expenses at social, athletic, and country clubs. Petitioners again contend that the amounts involved are not includable in gross income because they are noncompensatory business expenses of their employer. Alternatively, they contend that the reimbursements are deductible under sections 162(a) and 274. As we have already discussed, the value of the convention trips is includable in petitioners' gross income. We think the result is the same for reimbursed club dues, fees, and expenses. See also section 62(2)(A); sections 1.62-1(f)(2), and 1.274-5(e)(2)(ii), Income Tax Regs. Cf. Silverman v. Commissioner,supra at 853. Both the reimbursements and the expenditures, for which those reimbursements were made, were valuable to petitioners. Because of the reimbursements, petitioners enjoyed the facilities of their clubs at no cost to them personally. The fact that there may have been a business reason for joining the clubs does not negate the value of the club memberships to petitioners. The question still remains whether petitioners are entitled to a deduction for the reimbursed expenditures. Section 162(a) allows deductions *338 for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Before the costs of entertainment or recreational facilities may be deducted under section 162(a), however, petitioners must establish that the facility was used primarily for the furtherance of their trade or business and that the item was directly related to the active conduct of such trade or business. Section 274(a)(1)(B). Initially, we note that petitioners have not argued the applicability of section 274(e), which exempts taxpayers from satisfying the requirements of section 274(a). Where expenses are reimbursed by the employer and the employer does not treat the reimbursements as compensation, the employee need not satisfy section 274(a) to get the deductions. Section 274(e)(4)(A). The burden of satisfying section 274(a) instead shifts to the employer. This is designed to prevent the double disallowance of a single expenditure, once to the employee and a second time to the employer. H. Rept. No. 1447, 87th Cong., 2d Sess. (1962), reprinted in 1962-3 C.B. 405, 428. Again, in order to obtain the exception, petitioners must prove both that the *339 expenses were reimbursed and that the employer did not treat the reimbursement as compensation. Petitioners have failed to prove that their employer did not treat the reimbursements as compensation on its tax returns, withholding the appropriate tax on those amounts. See section 274(e)(3); H. Rept. No. 1447, supra at 1962-3 C.B. 428; section 1.274-2(f)(2)(iv)(b)(1), Income Tax Regs. See also Rule 142(a), Tax Court Rules of practice and Procedure. Thus they must satisfy the requirements of section 274(a) to obtain a deduction. Again, petitioners must prove (1) that they used the facility primarily for the furtherance of their trade or business, and (2) that the facility's use was directly related to the active conduct of such trade or business.In determining whether a club membership was used primarily for business, section 1.274-2(e)(4)(i), Income Tax Regs., provides in part: Generally, it is the actual use of the facility which establishes the deductibility of expenditures with respect to the facility; not its availability for use and not the taxpayer's principal purpose in acquiring the facility. Objective rather than subjective standards will be *340 determinative. If membership entitles the member's entire family to use of a facility, such as a country club, their use will be considered in determining whether business use of the facility exceeds personal use. The factors to be considered include the nature of each use, the frequency and duration of use for business purposes as compared with other purposes, and the amount of expenditures incurred during use for business compared with amount of expenditures incurred during use for other purposes. The regulations also provide that if more than 50 percent of the total calendar days of use was primarily for business, then the taxpayer is deened to have satisfied the primary use test. Section 1.274-2(e)(4)(iii)(a), Income Tax Regs. Moreover, primary use may also be judged on the basis of the amounts spent for business purposes. Worthy v. Commissioner,62 T.C. 303, 314 (1974). For the expenditures to be considered directly related to the active conduct of a trade or business, petitioners must have more than an expectation of deriving goodwill from the expenditure. Section 1.274-2(c)(3), Income Tax Regs. They must also have more than a general expectation *341 of deriving income or a specific business benefit at some future time. Id. Alternatively, the regulations provide that expenditures made in a clear business setting generally shall be considered directly related. This applies, however, only if "the taxpayer clearly establishes that any recipient of the entertainment would have reasonably known that the taxpayer had no significant motive, in incurring the expenditure, other than directly furthering his trade or business." Section 1.274-2(c)(4), Income Tax Regs. Objective standards are determinative. Thus country or athletic clubs ordinarily will not be considered clear business settings. Id. See also section 1.274-2(c)(7)(ii), Income Tax Regs. Finally, the regulations provide for the allocation of club dues, etc., to the extent that the club was used to furnish business meals. The allocated amounts are deemed to be directly related regardless of whether other club expenditures are in fact directly related. See section 1.274-2(c)(6), Income Tax Regs.
With respect to their respective country club memberships, petitioners have failed to prove that they used the facilities primarily for the furtherance of their trades or businesses. *342 They have substantiated only their use of the various clubs' dining facilities. They have failed to substantiate by adequate records or by sufficient evidence corroborating their own statements their use of club facilities other than the dining facilities. See section 274(d). The lack of substantiation is not because of a lack of use. We have found that each of the petitioners used club facilities for personal and family entertainment and recreation. Their general, vague testimony about personal use is insufficient by itself to satisfy the primary use test. See also section 1.274-5(c)(6)(iii), Income Tax Regs. Petitioners would have us determine primary use solely on the basis of their use of club dining facilities. Such an approach would ignore the reality of the situation. By focusing on the dining facilities only, we would necessarily ignore those facilities, such as golf courses, swimming pools, and tennis and paddleball courts, for which personal use is probably highest. Thus focusing on dining facility use alone provides little insight into petitioners' total use of all facilities. Therefore, having failed to satisfy the primary use requirement of section 274(a)(1)(B), *343 petitioners may not deduct their respective country club dues, fees, and expenses. Alternatively, petitioners request that we allocate the country club dues to any use that we find to be "directly related" and allow a deduction of that amount. Section 1.274-2(c)(6), Income Tax Regs., provides a formula for computing the portion of club dues that is so "directly related." See LaForge v. Commissioner,434 F.2d 370 (2d Cir. 1970), remanding on other grounds 53 T.C. 41 (1969). Before petitioners can use the formula, however, they must also satisfy the primary use test. See section 274(a)(1)(B). This they have failed to do. Consequently, none of the dues is deductible. We also find that petitioner Green's reimbursement of $12.28 for a lunch at the country club with Mr. Grueser is no different from the luncheon reimbursements discussed infra, and we treat it accordingly. Moreover, there was no business purpose for the luncheon meeting sponsored by Mrs. Green at the club. We do not consider those expenses even remotely related to Mr. Green's trade or business. With respect to his membership in the Athletic Club in 1973, petitioner Green has established *344 that he used the club facilities primarily for business. During 1973, he charged only one meal to his personal account. Of the eleven meetings he attended there, all but three were business. Typical of those business meetings was a board meeting of the Ohio Electric Utility Institute. We have found no other uses of the club by him. Furthermore, petitioner adequately substantiated his use by sufficient evidence corroborating his own statement. See section 274(d). Specifically, he provided us with a summary of his diary which listed the date and name of the organization whose representatives he met. At trial, he further corroborated the summary, explaining in detail the nature of each meeting and what was discussed. See LaForge v. Commissioner,supra.We have found no other use of the club by petitioner in 1973. Nevertheless, petitioner may deduct only those amounts directly related to the active conduct of his trade or business. In this regard, we emphasize that the only amounts involved are $375 in Athletic Club dues and $84 in expenses for locker fees, Touchdown Club dues, and a Christmas fund donation. That portion (approximately 67 percent) of *345 the Athletic Club dues which is attributable to petitioner Green's business meetings is directly related to the active conduct of his trade or business and thus is not disallowed under section 274(a). See section 1.274-2(c)(6), Income Tax Regs. The rest are not directly related and are therefore disallowed. Petitioner's argument that those other expenses promote his employer's goodwill and, therefore, are directly related is without merit. See section 1.274-2(c)(3)(i), Income Tax Regs. Petitioner completely failed to give any business purpose for those expenditures, and we consider them to be inherently personal. Further, we hold that the Athletic Club dues are also an ordinary and necessary expense within the meaning of section 162(a). If petitioner had not paid those dues, he would have been unable to use the club facilities for his business meetings. The expense of having ready access to those facilities for business meetings during working hours was "ordinary and necessary" to petitioner Green's position as the president and chief executive officer of a large electric utility company. However, although the entire dues are ordinary and necessary expenses, only the "directly *346 related" portion is deductible. See section 274(a)(1)(B). We compute the deductible amount to be $249.99 (8/12 X $375).
In 1972 and 1973, petitioner Grueser was also a member of the columbus Maennerchor Club. His employer reimbursed him for club dues in both years. Respondent determined those amounts to be additional income to petitioner. The Maennerchor Club is a German restaurant for members and their guests. Petitioner did not use the club facilities at all in 1972 or 1973. Because the club is operated solely to provide lunches of a type generally considered to be conducive to business discussions, it is not considered a social club for purposes of section 274. See section 1.274(e)(3)(ii), Income Tax Regs. Thus petitioner may deduct the amounts involved if he can satisfy the requirements of section 162(a). See also section 274(a)(2)(A). Petitioner must establish under section 162(a) that he paid or incurred the amounts involved, that they were ordinary and necessary expenses, and that they bore a proximate relationship to the conduct of his trade or business. See Hearn v. Commissioner,36 T.C. 672 (1961), affd. 309 F.2d 431 (9th Cir. 1962), *347 cert. denied 373 U.S. 909 (1963). We think petitioner has failed to meet his burden of proof on this item. All he proved was his complete lack of use of the club facilities. That is not sufficient to establish that the expenses are ordinary and necessary or that they bore any relationship whatsoever to his trade or business. See also Western Products Co. v. Commissioner,28 T.C. 1196, 1218 (1957). Christmas Gifts
The third issue is whether the amount reimbursed to petitioner Grueser by his employer for Christmas gifts resulted in taxable income to him. During 1973, petitioner's employer reimbursed him $70 for Christmas gifts to persons at the Grandview Inn. Respondent determined this to be additional income to petitioner.Petitioner has the burden of proof on this issue. Rule 142(a), Tax Court Rules of Practice and Procedure.Petitioner has failed to meet his burden. The record contains no evidence about the gifts in question. Therefore, we must uphold respondent's determination of this issue. Lunches
The fourth issue is whether amounts reimbursed to petitioners by their employer for the cost of certain lunches resulted in taxable *348 income to them. Petitioners contend that the reimbursements are not includable in their gross income or, in the alternative, that they are entitled to deduct the expenditures, upon which the reimbursements were based, as ordinary and necessary business expenses. Respondent contends that the reimbursements are includable in gross income and are nondeductible personal expenses. Each of the petitioner-husbands maintains an expense account with his employer. Among other things, they charge to those accounts the costs of meals during which they feel their employer's business was conducted. They pay for the meals and are later reimbursed. Most of the meals were eaten at the Fort Hayes Hotel across the street from petitioners' office building; the rest were eaten at various other restaurants in Columbus, Ohio. Their employer does not own or occupy the Fort Hayes Hotel or any of the other restaurants. Most of the meals were shared with other Company employees and occasionally with outside consultants. Petitioners Green and Grueser shared most of their meals, which are at issue here, together. Grueser would pay for them and receive reimbursements later.Respondent determined that *349 the cost of the meals to each petitioner is additional taxable income to them. Thus the cost of Grueser's meals was allocated to him alone, while Green's was allocated to Green. Respondent also determined that the cost of petitioner Fenstermaker's reimbursed lunches was additional income to him. Like Green and Grueser, Fenstermaker shared the meals with other employees and outside consultants. Except one lunch in 1973, none of his meals was shared with Green or Grueser. Fenstermaker would pay for the meals and receive reimbursements from his employer. Again, respondent only allocated Fenstermaker's share of the meals to him as additional income.The amounts representing each petitioners' reimbursed lunches are stipulated. Petitioners kept accurate records for their expense accounts. We have found that during luch, petitioners actually conducted business, discussing various company problems with each other and with outside consultants.We have also found that petitioners would normally take their lunches at a restaurant, usually the Fort Hayes Hotel, during working hours regardless of whether they discussed business at those lunches. As we previously discussed, the reimbursements *350 for club dues, fees, and expenses were includable in petitioners' gross incomes under section 61(a). Again, the result is the same for the reimbursed meals. See also section 62(2)(A); section 1.62-1(f)(2), Income Tax Regs. Petitioners concede that they are not entitled to exclude the value of their meals from gross income under section 119. See Commissioner v. Kowalski,     U.S.     ( Sup. Ct. Nov. 29, 1977, 40 AFTR 2d 77-6128, 77-2 USTC par. 9748), affg. 65 T.C. 44 (1975). They instead rely on Van Rosen v. Commissioner,17 T.C. 834, 838 (1951), for their contention that the reimbursements are not includable in gross income. Petitioners argue that the expenditures were made according to the company's business needs and are no different from expenditures for a place to work or for tools and machinery to work with. We disagree. As the Court stated in Commissioner v. Kowalski, 40 AFTR 2d at 77-6135, 77-2 USTC par. 9748 at 88,551: If cash meal reimbursements could be excluded on the mere showing that such payments served the convenience of the employer, * * * then cash would be more widely excluded from income *351 than meals in kind, an extraordinary result given the presumptively compensatory nature of cash payments and the obvious intent of section 119 to narrow the circumstances in which meals could be excluded. Thus, because the reimbursements for the meals are not excluded from gross income under section 119, petitioners will be taxable on them unless petitioners establish that they are entitled to deduct those amounts. Generally, the costs of the meals of a taxpayer, his family, and nonbusiness guests are personal expenses for which no deduction is allowable, unless incurred whice away from home in the pursuit of a trade or business. Section 262; section 162(a)(2). Moreover, where the taxpayer entertains a business guest, he may deduct only that portion of his meal cost which exceeds an amount he would normally spend on himself. See Teeling v. Commissioner,42 T.C. 671, 685 (1964); Smith v. Commissioner,33 T.C. 861, 867 (1960); Sutter v. Commissioner,21 T.C. 170, 173-174 (1953); Hyslope v. Commissioner,21 T.C. 131 (1953); Drill v. Commissioner,8 T.C. 902 (1947). Thus in Smith v. Commissioner, *352 we held that the cost of the taxpayer's own meals, expended by him while entertaining business guests, was a nondeductible personal expense. And in Drill v. Commissioner, we held that the cost of the taxpayer's meals, incurred while working overtime, was a nondeductible personal expense. Petitioners in this case do not contend that the meals are deductible under section 162(a)(2) as travel expenses incurred while away from home. Further, they have failed to establish that the lunch expenses exceeded that which they would otherwise have expended for personal purposes. On the contrary, we have found that petitioners would have expended those amounts on themselves for lunches regardless of whether they conducted business at lunch. We emphasize that petitioners are only being taxed on the reimbursements made for the cost of their own lunches and not the lunches of their business guests. The former amounts are clearly personal and, therefore, are nondeductible; see also LaForge v. Commissioner,434 F.2d 370 (2d Cir. 1970), remanding on other grounds 53 T.C. 41 (1969); the latter amounts have already been allowed by respondent and are not at issue *353 here. Petitioners' reference to a Treasury publication dated Jnuary 30, 1978, is inapposite. The publication is "The President's 1978 Tax Program, Detailed Descriptions and Supporting Analyses of the Proposals." It suggests that the personal element of a "business" meal is deductible in full and proposes legislation to correct certain abuses associated with those types of deductions. That publication is not the law; it is nothing more than the President's tax legislative proposals. Consequently, it may not be used by petitioners as binding precedent in this Court. Petitioners also rely on Rev. Rul. 63-144, 1963-2 C.B. 129, which provides in part as follows: PERSONAL PORTION OF BUSINESS MEALS 31. Question: Several of these questions and answers refer to the cost of a taxpayer entertaining a business customer at lunch or dinner. To what extent is the cost of the taxpayer's own meal deductible? Answer: Judicial decisions under established law, applying the statutory rules that deductions are not allowed for personal expenses, hold that a taxpayer cannot obtain a deduction for the portion of his meal cost which does not exceed an amount he would normally *354 spend on himself. The Service practice has been to apply this rule largely to abuse cases where taxpayers claim deductions for substantial amounts of personal living expenses. The Service does not intend to depart from this practice. [Id. at 135] Petitioners first contend that there is no judicial authority for the proposition that "a taxpayer cannot obtain a deduction for the portion of his meal cost which does not exceed an amount he would normally spend on himself." As we have already discussed, there is substantial authority for that principle. See, e.g., Teeling v. Commissioner,supra. Petitioners next contend that this is not an "abuse" case as described in the ruling. This second contention is inapposite. Petitioners may not deduct personal expenses.See also section 262. Respondent cannot change that basic principle by his ruling. Neither is he bound by prior rulings; he may treat similar tax events differently or even treat the same issue differently in different taxable years, at least until the administrative determination is dignified by precedent and sanctioned by higher authority. See Best Lock Corporation v. Commissioner,29 T.C. 389, 408 (1957); *355 Kenyon Instrument Co. v. Commissioner,16 T.C. 732, 740 (1951). See also Dixon v. United States,381 U.S. 68, 72-75 (1965); Landau v. Riddell,255 F.2d 252, 255 (9th Cir. 1958); Keystone Automobile Club v. Commissioner,181 F.2d 402, 406 (3d Cir. 1950), affg. 12 T.C. 1038 (1949). This is not a case in which an administrative construction embodied in the regulations is expressly or tacitly approved by subsequent congressional reenactments of the statutory provision upon which the administrative construction relied. Cf. Helvering v. R.J. Reynolds Tobacco Co.,306 U.S. 110, 114-115 (1939). Finally, we note that respondent moved and was allowed at trial to increase his determination of additional income for petitioner Grueser in the amounts of $173.50 for 1972 and $390 for 1973.With respect to those amounts, the burden of proof was on respondent. Rule 142(a), Tax Court Rules of Practice and Procedure. Respondent failed to meet that burden. We are unable to determine from the record the source or nature of the additional items.In this regard, we have only respondent's bare assertion *356 that they represent reimbursed expenses. Respondent has failed to delineate the expenditures for which the reimbursements were allegedly made and to prove that those expenditures are nondeductible. Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Arthur G. Green and Josephine C. Green, docket No. 11067-76; and Robert J. Grueser and Harriett D. Grueser, docket No. 11068-76.↩
2. All payments and reimbursements, whether for petitioners' expenses at the conventions, for their athletic or country club dues, fees, and expenses, or for the costs of "business" lunches, were made pursuant to established Company policy. This policy was first formally established by a former Company president on May 2, 1960. It is the subject of a memorandum from the president to all officers of the Company. The memorandum provides in pertinent part as follows: It is the policy of the Company to reimburse all officers for expenses incurred in behalf of the Company. Generally speaking, reimbursable expenditures comprise travel and living costs incurred while out of town, or in-town expenses which are a normal business expense and not a part of normal living costs. Uniformity of expense treatment is a desirable objective in the administration of this policy. * * *
Approval and Reimbursement of Expenses Reimbursement is obtained by submitting to the President for approval an itemized Expense Report * * * General Personal Advancement and Position
Memberships in professional associations, civic groups and clubs, the cost of which is to be reimbursed by the Company, must be approved by the President. Such approval will be selective and given only where the Company interest is served and is the major consideration. Expenses for attendance at meetings and conferences will be reimbursed when such attendance is in the interest of the Company. Expenses Incurred for the Company
In many instances Company officers are required, as a result of their position, to approve expenditures for such items as business meetings in hotels or restaurants, i.e., supervisory or department meeting expenses, and other similar costs for the Company. It is not the intention of this policy statement to include this type of expenditure as being within the scope of officers' expenses and accountable as such. It is the Company's policy that the above mentioned costs are in the category of costs incurred for the Company rather than on behalf of the Company and they should be accounted for under the Company's normal purchasing and accounting routine. Travel With Wife
There are selective business functions which occasionally require the attendance of an officer's wife on behalf of the Company. These occasions should be cleared in advance with the President. The expenses of the wife in such instances will be reimbursed as though she were an employee of the Company. Travel for Combined Business and Personal Reasons
Occasionally a trip may combine business and personal reasons, such as extending or combining a trip to transact Company business with a vacation trip. In such instances, the Company will reimburse for the business expense portion of the trip to the extent it would have reimbursed the individual had he been traveling alone. However, although the amounts at issue here were ostensibly paid pursuant to the above memorandum, petitioner Green was responsible as Company president for implementing and interpreting that policy.↩
3. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954 as in effect for the taxable years in issue.↩
4. Petitioners do not argue that any of the reimbursements are specifically excluded from gross income under section 102(a) (dealing with gifts) or any other section.↩
5. Respondent does not contend that the expenses of the petitioner-husbands, which also were paid or reimbursed by the company, are taxable income to them.↩
6. Respondent does not argue, and we do not consider, the nondeductibility of the wives' expenses under section 274. But see section 274(e)(7)↩.