FRANK V. RUSSO and DIXIE A. RUSSO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Russo v. Commissioner
Docket No. 4947-80.
United States Tax Court
T.C. Memo 1982-248; 1982 Tax Ct. Memo LEXIS 498; 43 T.C.M. (CCH) 1308; T.C.M. (RIA) 82248; May 5, 1982. Frank V. Russo, pro se. Alan J. Pinner, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined an income tax deficiency of $ 420 for the taxable year ended December 31, 1976. The issues for decision are: (1) Whether the Commissioner properly disallowed certain employee business expenses claimed by petitioners Frank and Dixie Russo *499 on their 1976 income tax return; and (2) whether they may deduct sales taxes on furniture purchases in addition to the amount claimed on the basis of the sales tax tables. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners, husband and wife, timely filed a joint Federal income tax return for the taxable year 1976. At the time their petition was filed, Frank Russo resided in Fountain Valley, California, and Dixie Russo resided in Huntington Beach, California. Frank Russo (Frank) was employed as a manager of the Garden Square Bowling Lanes (Garden Square) in Garden Grove, Orange County, California, during 1976. Garden Square was a corporation "owned" by unidentified members of Frank's family. His compensation was limited to a fixed salary, and he was not entitled to reimbursement for any expenses incurred in the performance of his duties. Garden Square was a "family recreation center", consisting of a cocktail lounge, restaurant, coffee shop, banquet facilities, and bowling lanes. As part of his duties, Frank had sole responsibility for hiring entertainers to *500 appear in the cocktail lounge. In this connection, he would visit a number of different cocktail lounges in Orange County, generally on Saturday nights, to evaluate the entertainers appearing at such lounges, with a view to engaging the more promising ones for Garden Square. He spent 35 Saturday nights for this purpose in 1976. He would generally visit some five or six, or at times as many as eight, different cooktail lounges on a single Saturday night. At each lounge he would appear as a patron and would purchase one drink, either alcoholic or nonalcoholic, for himself. If an entertainer interested him, he would on occasion invite the entertainer to join him for a drink. The price of a drink was generally somewhat over $ 1.00 and never over $ 2.00. Thus, if Frank expended less than $ 2.00 at a particular lounge, the entire expenditure was attributable to the beverage purchased for himself. On the other hand, if the check came to over $ 2.00, say $ 2.50, one-half of the amount would be attributable to Frank's drink, and the other half to the beverage purchased for someone else, at times for the entertainer. Also, Frank was on occasion accompanied by his wife, and, similarly, when *501 the check exceeded $ 2.00, an allocable portion of the entire check might be attributable to a beverage ordered for her. Frank maintained two business diaries, one for "business expenses" and one for "travel & mileage". The expense entries for these Saturday night excursions list only the cocktail lounges visited and the aggregate amount spent for drinks at each establishment. The mileage diary describes these visits in some such language as "Check On Places For Future Entertain". Neither diary notes the occasions on which Frank's wife accompanied him. [1]
*502 Frank's business expense diary shows entries for several other types of expenditures. On one day each month, he visited some eight local bowling centers, apparently as a patron, for the purpose of checking on their charges and evaluating his competition. As in the case of cocktail lounges, he would purchase a beverage at each such bowling center on each visit, and the diary discloses an amount of between $ 1.00 and $ 3.00 spent at each bowling center. However, the record fails to show whether, as in the case of beverages purchased at cocktail lounges, an amount in excess of $ 2.00 represents the cost of beverages for Frank and someone else. The business expense diary itself lists merely the names of the bowling centers and the aggregate amount spent at each on the particular day, and the mileage diary describes the round of visits in language such as "Business Check Of Other Bowling Centers". Frank from time to time attended luncheon meetings of the Bowling Pride Association, and paid for his own meals in amounts ranging from $ 5.64 to $ 6.87. Some eight such lunches are recorded in the business expense diary for 1976, which, however, lists merely the bowling center where *503 the luncheon meeting was held and the amount spent for lunch on each occasion. The mileage diary refers to such occasions as "Bowling Promotion Meeting[s]". Although Frank was not directly responsible for management of the bowling lanes, his duties included meeting with social directors or personnel directors of local business organizations in order to obtain patronage of Garden Square by bowling leagues sponsored by such organizations for their employees. On seven occasions Frank purchased lunch for a social or personnel director and himself. In each case the business expense diary entry includes the date, name of the restaurant, amount, and name of the business enterprise that employed the social or personnel director. There are 11 other restaurant entries in the business expense diary which fail to include any information at all beyond date, amount, and name of the establishment. Frank claimed at the trial that three of these entries, apparently representative of the others, were for meals with bowling league secretaries, but he did not state the names of either the secretaries or the leagues. There are no correlating explanatory references to even a single one of these *504 meals in the mileage diary. Finally, the business expense diary includes expenditures associated with two alleged business trips, as follows: Saturday 8-22-76
San Diego Men's State Tourn Frontier Bowl
Lunch & Drinks
$ 10.27
Black Angus
Dinner & Drinks
12.89
Clairmont Bowl
Lunch & Drinks
8.23
Campout Lodgings
3.00
34.39
Friday 10-1-76
Las Vegas for Elk's Bowling Tourn
Lodging at Stardust
2 nites
$ 69.56
Barstow Beacon Bowl
Lunch
7.99
Breakfast at Stardust
6.61
Dinner at the Bootlegger
14.67
Breakfast at Showboat
7.32
In respect of the San Diego trip, the mileage diary indicates that the trip was made in connection with an effort to have the 1978 state tournament at Garden Square. No such explanation is entered for the Las Vegas trip, apart from repeating that the trip was "For Elk's Bowling Tourn". On their 1976 Federal income tax return, petitioners claimed a business expense deduction for "Entertainment & Promotion Req'd to Obtain Entertainers", in the amount of $ 1,040, which the Commissioner disallowed in its entirety. The claimed $ 1,040 deduction was an estimate of all the expenditures recorded in the business expense diary; *505 however, the total amount recorded was actually somewhat in excess of $ 1,100. In addition, petitioners claimed an "employee business expense" deduction in the amount of $ 1,109, primarily for automobile mileage, of which the Commissioner disallowed $ 563, representing the travel that correlated with the various expenses in the business expense diary. The Commissioner's disallowance of both items set forth above was based upon the petitioners' failure to establish that the claimed expenses represented ordinary and necessary business expenses within section 162, I.R.C. 1954, or, where applicable, that they met the record keeping requirements of section 274. At trial, the Government conceded that all of the mileage was substantiated, leaving as to that item only the issue of whether it was a deductible business expense. Petitioners also claimed a deduction of $ 120 for six percent sales tax on furniture purchased which Frank estimated at $ 2,000. This claimed deduction was in addition to a $ 306 deduction for sales taxes computed on the basis of the optional state sales tax tables, and an $ 888 deduction for taxes paid on purchases of a van and a truck. The Commissioner disallowed *506 the $ 120 deduction, stating that petitioners could deduct actual sales taxes paid and verified, or the amount from the tables, but not both. Since the amount from the tables was greater, this latter amount was allowed, in addition to the $ 888 deduction relating to the van and truck. OPINION 1. Business expenses. To be deductible the claimed business expenses must satisfy not only the requirements of section 162 "as ordinary and necessary expenses paid * * * in carrying on any trade or business" but also the section 274 record keeping requirements to the extent that they may be applicable here. (a) Saturday night and monthly excursions. We first consider the expenses relating to the 35 Saturday night visits to cocktail lounges in search of entertainment talent for the Garden Square cocktail lounge, as well as the comparable expenses incurred in the 12 monthly visits to some eight bowling centers to check on their business practices, particularly as they affected competition with the Garden Square bowling lanes. In our judgment, both classes of visits were within the sphere of Frank's responsibilities as manager of Garden Square, and were proximately related thereto. *507 The expenses thus incurred, with two exceptions noted immediately below, were plainly deductible. To the extent that the expenses included the cost of beverages purchased for Frank's wife, the record fails to establish that they bore any relation to his business, and therefore such portion of the expenses fails to satisfy the demands of section 162. To the extent that beverages were purchased for prospective entertainers, the cost thereof fails to satisfy the record keeping requirements of section 274. Neither the business expense diary nor the mileage diary identifies any prospective entertainer nor is there any way that one can determine from either diary how much was in fact spent for drinks for such prospective entertainers. All we know is that where the cost of beverages at any particular cocktail lounge was $ 2.00 or more, one-half of the total cost was allocable to Frank and the other half either to Frank's wife or to a prospective entertainer. Accordingly, to the extent that the beverage charges on the Saturday night excursions were $ 2.00 or more at a particular lounge, one-half thereof may not be deducted. [2] And although the situation is not exactly the same in respect *508 of the beverage charges at the monthly visits to bowling centers, there is nothing in the record to show that the same result should not follow as to those charges. In respect of the charges for beverages ordered for Frank himself at both the cocktail lounges and the bowling centers, we are of the opinion that section 274 is inapplicable. Such charges were misdescribed as "entertainment expenses". They were no such thing. They in effect were merely in the nature of Frank's "admission fee", purportedly as a patron, when he was in fact on a business mission. They are not unlike the cost of tickets purchased by a theatre critic who attends a performance for business reasons notwithstanding that theatre tickets are normally associated with entertainment and the cost thereof must ordinarily satisfy the requirements of section 274. Cf. section 1.274-2(b)(1)(ii), Income Tax Regs.
There is no *509 dispute between the parties as to the mileage charges relating to the Saturday night and monthly expeditions, apart from the Government's contention that the costs connected with such expeditions fail to satisfy the ordinary and necessary business expense standards of section 162. However, in view of our conclusion above, the mileage charges that correlate with the 35 Saturday night and 12 monthly expeditions are deductible. [3]
(b) Luncheon meetings of Bowling Pride Association. As to the luncheon meetings of the Bowling Pride Association, these appear to be proximately related to Frank's business. But the only expense incurred by him in connection with such meetings, apart from mileage, was the cost of his own lunches. Frank's meals, however, are nondeductible unless it is established that his expenditures were "different from or in excess of" the amount he would otherwise have spent. Sutter v. Commissioner,21 T.C. 170, 173 (1953); see also Duggan v. Commissioner,77 T.C. 911, 914 (1981); *510 Fife v. Commissioner,73 T.C. 621, 625, fn. 4 (1980); Smith v. Commissioner,33 T.C. 861, 867 (1960); Fenstermaker v. Commissioner,37 T.C.M. 898, 909, 47 P-H Memo T.C. par. 78,210 (1978). Since no evidence was introduced in respect of the cost of Frank's meals when he ate alone, we have no basis for determining whether the expenses in the diary are different or excessive. Therefore, the cost of his meals is a nondeductible personal expenditure. The situation in respect of mileage, however, is otherwise.The luncheon meetings obviously had a definite business purpose, and the associated transportation costs are deductible.[4]
(c) Entertainment expenses (meals) for social directors. On seven occasions Frank took to lunch a social (or personnel) director of a company that sponsored bowling activities for its employees. The purpose of such entertainment was clearly indicated to promote the use of Garden Square's bowling facilities by the particular company. The cost *511 of entertaining such person was plainly deductible under section 162, and taking the entries in both diaries together, the requirements of section 274 were satisfied. Similarly, the local mileage charges, which did not involve overnight trips, were not subject to the requirements of section 274, [5] and are deductible under section 162 in view of their obvious relationship to Frank's business. However, as in the case of Frank's lunches at the meetings of the Bowling Pride Association, supra, the costs of his own meals when entertaining the social or personnel directors are not deductible in the absence of any showing that they exceeded his normal costs. No such showing was made here. Although the charges for Frank's meals are not separately set forth in the business expense diary, it may be assumed in the absence of contrary evidence that on the average the cost of his meals would be equal to that of the person entertained. Cf. Smith v. Commissioner,33 T.C. 861, 867 (1960). An appropriate allocation is therefore required. [6]
*512 (d) Other entertainment charges. The business expense diary contains 11 entries identified with certain named establishments, apparently restauraunts or places of entertainment.Apart from an amount and the date in each instance, nothing further appears in that diary in this connection, nor is there any explanation whatever in respect of such alleged charges in the mileage diary. Plainly, there has been substantial failure to comply with the requirements of section 274, and these alleged charges are not deductible. No mileage was claimed in respect thereof. (e) San Diego and Las Vegas trips. We find that the charges related to the San Diego trip are clearly deductible, and, although the matter may be a borderline one in connection with the Las Vegas trip, we think that on the whole the statutory requirements for deductibility (except as to lodging expense) have been established.It seems rather obvious to us that the purpose of each trip was to further the interests of bowling activities at Garden Square. As to the lodging expense component, however, we must sustain the Commissioner, in view of the failure of the petitioners to produce receipts or similar substantiating *513 documentary evidence. Section 1.274-5(a)(1) and (c)(2)(iii)(a), Income Tax Regs. 2. Sales Tax Deduction. On their 1976 tax return, petitioners claimed a deduction of $ 120 for sales taxes paid on an estimated $ 2,000 of furniture purchased during 1976. Petitioners also claimed deductions of $ 306 computed on the basis of the optional state sales tax tables and $ 888 on motor vehicle purchases. The Commissioner allowed the latter two amounts as deductions, stating that petitioners could "use the sales tax table * * * or the amount of sales tax actually paid, but not both". Section 164(a) [7] allows a deduction for, inter alia, state and local sales taxes "paid" during the taxable year. As a matter of administrative convenience, the Commissioner allows taxpayers to compute the deduction using the optional state sales tax tables and in general no verification is required if this amount is claimed. A taxpayer is at liberty to claim a greater amount; as with any other deduction, however, the burden of proving entitlement to such amount rests firmly on the taxpayer. The Commissioner does permit additions to the amount from the sales tax tables for taxes paid on a select *514 group of costly items, e.g., motor vehicles and airplanes, but purchases of home furnishings are not included in this exception. Petitioners have failed to show that they paid sales taxes during 1976 in excess of $ 1,194, the amount allowed by the Commissioner. As we stated in Edmister v. Commissioner,36 T.C.M. 874, 875, 46 P-H Memo T.C. par. 77,208 (1977): The fact that respondent, as a matter of administrative convenience, permits deductions in accordance with the tax tables and in addition permits deductions with respect to tax on certain specific items, does not relieve a taxpayer * * * from showing that the amount of the deduction he is allowed by the tax tables is less than the sales tax he actually paid if he is to be entitled to a deduction in excess of the amount shown in the tax tables. See also Worden v. Commissioner,T.C. Memo. 1981-366. We hold for the Government on this issue. To reflect *515 the foregoing, Decision will be entered under Rule 155.
Footnotes
1. In addition to the 35 Saturday nights, when Frank visited a number of cocktail lounges on each occasion for the purpose of recruiting entertainers, there were four other Saturday nights (June 26, July 10, July 17, and July 24) in respect of which the business expense diary recorded merely a single place of entertainment together with an amount (approximately $ 14) substantially greater than the amounts spent at any single cocktail lounge on any one of the 35 Saturday nights. As previously indicated, at each of the cocktail lounges visited on the 35 Saturday nights, Frank purchased only a single drink for himself, always at a cost of less than $ 2.00, accompanied at times by a beverage purchased for an entertainer or his wife at a like price. Although the mileage diary contains a notation for each of the four dates reading "Entertainment For Lounge", there is no corroborating evidence that these visits were of the same character as those on the other 35 Saturday nights. In view of the substantially larger amounts spent at those four lounges on those evenings, we find, in the absence of further clarifying evidence, that each of those expenditures related to predominantly personal entertainment, and was not proximately related to Frank's business.↩
2. As to the four additional Saturday night visits referred to in fn. 1, supra,↩ each time to a single place of entertainment, which we have found to be personal, no deduction is allowable in respect of the expenditures on such occasions, including the mileage associated therewith.
3. We leave it to the parties to make the necessary computations not only as to mileage, but also as to the cost of beverages, in connection with the decision to be entered herein under Rule 155.↩
4. The appropriate computation of mileage charges can be made by the parties in connection with the decision to be entered under Rule 155. See fn. 3, supra.↩
5. See Gestrich v. Commissioner,74 T.C. 525, 530-531↩ (1980). 6. That allocation can be made by the parties in connection with the decision to be entered under Rule 155. Cf. fns. 3 and 4, supra.↩
7. SEC. 164. TAXES (a) General Rule.--Except as otherwise provided in this section, the following taxes shall be allowed as a deduction for the taxable year within which paid or accrued: (4) State and local general sales taxes.↩